**[Cite as *State v. Anton*, 2022-Ohio-2760.]**

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JASON ANTON, | : | Case No. 2022CA0004 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Morrow County
                                  Court of Common Pleas, Case No.
                                  19CR46


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 August 8, 2022


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

THOMAS SMITH                              WILLIAM T. CRAMER
Morrow County Prosecutor                  470 Olde Worthington Road, Suite 200
60 East High Street                       Westerville, Ohio 43082
Mount Gilead, Ohio 43338

*Baldwin, J.*

**{¶1}**    Appellant, Jason R. Anton, appeals the sentence imposed upon him by the Morrow County Court of Common Pleas. Appellee is the State of Ohio.

### STATEMENT OF THE CASE AND THE FACTS

**{¶2}**    Appellant, Jason Anton was indicted by the Morrow County grand jury on February 28, 2019 and charged with domestic violence, a violation of R.C. 2919.25 (A) & (D)(3). The indictment noted that he was previously convicted of domestic violence in Mansfield Municipal Court so the current offense was elevated to a felony of the fourth degree.

**{¶3}**    A warrant was issued for Anton's arrest in 2019, but he was not arrested until August 23, 2021. At his arraignment he entered a plea of not guilty and was specifically directed to "have no contact, either directly or indirectly with the victim[s] in this matter," his spouse and children. The matter was again before the trial court and "the court reiterated on the record to the defendant that he should have no contact with the victim or her children." (Journal Entry, October 4, 2021, page 1).

**{¶4}**    Anton filed a motion with the court requesting an opportunity to change his plea to guilty. A hearing was held to consider his request and the trial court engaged in a thorough and lengthy colloquy with Anton explaining his rights and emphasizing the fact that he must not have any contact with his spouse or children. The court also emphasized the importance of Anton's compliance with the terms of his pretrial bond and conditions. The warnings included the following:

> So it sort of dovetails into Paragraph 6. Paragraph 6 says that if you were out on bond between now and up to sentencing, and you violate bond,

the conditions of your bond, such as if bond were to have a limitation that you are not to have contact or however with the victim and you had contact directly, third parties, by telephone, through children, or the children themselves, if you had contact, you would technically have violated your bond. That means the State can now make a recommendation, which could be everything, that whole spectrum, community controls. It could recommend prison.

(Change of Plea, Transcript, page 41, lines 1-12).

So anyhow, that's sort of saying with paragraph 6, that if for some reason between now and if there is a conviction and if there is a bond that is actually effective, if somebody is released, they have to abide by what they are supposed to do and if they don't, I'm going to take that into consideration and as I said before, it is possible that there could be other criminal charges too if they don't do what they are supposed to.

(Change of Plea, Transcript, page 42, lines 15-22)

Okay. Now, no contact. What does that mean? This means no telephone, no writings, no computer, no electronic means, texting. It means to them directly, now this is the two kids and the wife, directly or through third parties.

(Change of Plea, Transcript, page 60, lines 16-20)

The bond conditions are there is to be no contact with you directly, indirectly or your two children at all. If there is contact through your parents, through third parties, through computers, through messages, through

texting, through some electronic means, he could be subjected to the bond being revoked and it will have definite impact on the sentencing, which I'm going to be considering.

(Change of Plea, Transcript, page 62, lines 18-25)

THE COURT: * * * You go to work. You come back. You stay at the house. You go to work. You come back and if you are out, you are at least earning a living and paying and assisting with your children and your spouse. There is a factor there. So there is a benefit there. It is very concerning. I'm taking a bit of a risk here.

MR. ANTON: That's all I want to do is go to work.

THE COURT: It is okay. It is all right. I want you to understand, I'm taking a bit of a risk and believe me I will come down quite hard if there is a contact.

(Change of Plea, Transcript, page 65, lines 1-13)

THE COURT: * * * And while it is a 5th degree and while there may be a presumption of dealing with the possibility of not putting him on community controls, if he violates those presumptions go away. And I can send him to prison if that's the choice I make. I can send you to prison, sir.

(Change of Plea, Transcript, page 65, line 21 to page 66, line 1)

THE COURT: * * * Because if it continues, if there are phones(sic) calls, if there is a contact made, that contact, even though you don't want that contact, could put you in prison.

MR. ANTON: Yes, sir.

(Change of Plea, Transcript, page 66, lines 7-11).

{¶5}     The state and Anton entered into a plea agreement which required the state to amend the indictment to reduce the charge to attempted domestic violence, a fifth degree felony, to which Anton would enter a plea of guilty. On November 29, 2021, the trial court accepted the guilty plea and scheduled sentencing to occur on January 14, 2022.  In the interim, the trial court referred Anton to the Morrow County Adult Probation Department for completion of a Presentence Investigation Report.  Anton's bond would be "potentially modified at the court's discretion without further hearing to a personal recognizance with the prior conditions applying and the following additional conditions": That Anton fully cooperate with the presentence investigation; That he should have no contact with the victim; That he should obtain alcohol and drug assessment at Maryhaven and abide by any recommended follow-up,  and that he should obtain a mental health assessment at Maryhaven and abide by any recommended follow-up. The court also emphasized that the no contact order would remain in effect and, at the court's discretion, and if there is no contact by defendant with the victims, the defendant may be released on personal recognizance bond two hours prior to a scheduled appointment at Maryhaven as long as he does not contact the victim.

{¶6}     On December 9, 2021 Anton's probation officer filed a request for bond revocation alleging that Anton failed to report to Maryhaven and did not report to her office after he was released from jail. Anton also admitted that he had not stayed at the address approved by the probation department. These matters were considered at Anton's sentencing on January 18, 2022.

**{¶7}** During the sentencing hearing the court was informed that Anton was referred to the community-based correctional facility but he refused to cooperate. It was also disclosed that Anton had contact with the victim/spouse in direct violation of the conditions set by the court. The trial court reviewed the PSI that was completed and noted that the investigator "who has done dozens and dozens of these, is probably the first time that I have ever read she was seriously concerned about the aggressive behavior that was vented toward her by the defendant." The trial court noted that "* * * she felt threatened. She thought she was going to be hurt." (Sentencing Transcript, page 18, lines 3-12).

**{¶8}** The trial court engaged in a lengthy review of facts in the presentence investigation as well as the statements of the defendant, the prosecutor, and the victim.

**{¶9}** The trial court summarized some of the factors that were considered on the record:

Violation during supervision. No remorse demonstrated. Pattern of drug and alcohol related to the offense. Refuses to acknowledge the pattern. Refuses treatment. I ultimately gave an option here the CBCF. Refused to do that. We had to try to find a special CBCF, community based correctional facility that would work because he is a sex offender. So we went the extra miles(sic) to try and work something out. He doesn't respond favorably to past criminal conviction and significant history of criminal convictions

(Sentencing Transcript, page 22, lines 20 to page 23, line 4).

**{¶10}** Anton was sentenced to twelve months in prison and fined $2500.00. The trial court suspended $2000.00 of the fine but ordered that Anton pay court costs and attorney's fees.

**{¶11}** Anton filed an appeal and submitted a single assignment of error:

**{¶12}** "I. BY CLEAR AND CONVINCING EVIDENCE, THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S DECISION TO IMPOSE A MAXIMUM PRISON TERM ON APPELLANT."

## STANDARD OF REVIEW

**{¶13}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. See, also, *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 28.

**{¶14}** R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. The Supreme Court of Ohio further clarified the *Jones* holding in *State v. Toles,* 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, ¶ 10, "R.C. 2953.08, as amended, precludes second-guessing a sentence imposed by the trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12."

*{¶15}* In *State v. Bryant*, the Court further explained the holding in *Jones:*

The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. See *Jones* at ¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was improperly imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are " 'otherwise contrary to law.' " *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34 quoting *Black's Law Dictionary* 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

*State v. Bryant,* 2020-0599, 2022-Ohio-1878(June 7, 2022), ¶ 22.

**ANALYSIS**

*{¶16}* Anton argues that the decision by the Supreme Court of Ohio in *Jones* and the terms of app R. C. 2953.08 (G) (2) create a paradox:

However, R.C. 2953.08(G)(2) authorizes an appellate court to reduce, modify, or vacate a felony sentence only if it finds by clear and convincing evidence that (a) the record does not support the sentencing court's findings under certain statutory provisions or (b) the sentence is otherwise contrary to law. This provision poses difficulties for reviewing Anton's sentence. Anton's sentence did not involve any of the statutory findings noted in subdivision (G)(2)(a) and it was not contrary to law under subdivision (G)(2)(b) because it was within the statutory sentencing range.

(Appellants' Brief, page 2-3).

{¶17} Anton suggests the solution is to rely upon the Supreme Court's comments in *Marcum* despite the Supreme Court's ruling, in *Jones,* that "[T] he statements in Marcum at ¶ 23 suggesting that it would be "fully consistent" with R.C. 2953.08(G) for an appellate court to modify or vacate a sentence when the record does not support the sentence under R.C. 2929.11 or 2929.12 were made only in passing and were not essential to this court's legal holding. The statements are therefore dicta." *Jones, supra,* at ¶ 27.

{¶18} We disagree with Anton's suggestion that the *Jones* opinion requires that we fashion a solution that allows review of his sentence on his terms. *Jones* and its progeny allow review for sentences that result from consideration of factors outside R.C. 2929.11 or 2929.12, exceed statutory sentencing limits or are otherwise contrary to law. Anton interprets his failure to find a reviewable error under the *Jones* rule as a conflict with this court's ability to review his sentence under R.C. 2953.08. We find no conflict

between the opinion and the statute, but instead find that there is no error in the record in this case.

**{¶19}** The Supreme Court has made clear that trial courts are prohibited from considering factors that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12. In the case before us we have found nothing in the record that would suggest the court considered factors that were outside the bounds of R.C. 2929.11 or 2929.12 and, in fact, Anton does not direct our attention to any such violation. Instead, he concludes that the sentence was not contrary to law because it was within sentencing guidelines. Anton suggests no other basis for finding that the sentence was contrary to law and we have reviewed the record and find no such error.

**{¶20}** Anton's assignment of error is denied and the decision of the Morrow County Court of Common Pleas is affirmed.

By: Baldwn, J.

Wise, Earle, P.J. and

Gwin, J. concur.